Case number 25547 LD Management Company et al. v. Jim Gray. Argument not to exceed 15 minutes per side. Mr. Kyle Ray, you may proceed for the appellant. Good morning, your honors. My name is Kyle Ray. May it please the court, counsel, I have reserved three minutes. I represent the appellant, Jim Gray, as the secretary of the Kentucky Transportation Cabinet in this matter. This case is a commercial speech case. Importantly, I'm not aware of any dispute that the speech involved in this case is anything but commercial speech. Counsel, does the ordinance apply only to commercial speech or does it apply to both? Your honor, the ordinance does apply to both commercial speech and non-commercial speech, but in this case, the only speech involved is commercial speech. This is a facial challenge? It is both a facial challenge and an as-applied challenge, your honor. Okay. And because it's commercial speech, the Kentucky Billboard Act, which regulates this outdoor commercial advertising device of the appellees, is subject to intermediate scrutiny under Central Hudson and the seminal Supreme Court case of Metromedia versus the City of San Diego. Now, Metromedia really does help you on the commercial speech aspects of the case, but Metromedia was also a similar statute that had applications both commercial and non-commercial, and there is additional sections in the opinion after that commercial speech section clearly said the non-commercial applications are unconstitutional. And at the end of the opinion, they said it was facially unconstitutional because of the non-commercial applications. So even your best case, Metromedia, wouldn't that suggest that we should say the same thing for this statute because it has both commercial and non-commercial, and therefore it should be deemed facially unconstitutional? Your honor, the Metromedia case, the bifurcated approach, obviously the Metromedia case concerned both commercial speech and non-commercial speech, and the part that dealt with commercial speech only is what is applicable to our case. Our case has only commercial speech. But what do you make of the court's holding at the end, though, that I'm with you on the different components, but then it said it was facially unconstitutional, which I guess I took the court to mean unconstitutional on its face, therefore we won't apply the statute. Well, your honor, I, it was, well, it's a plurality opinion, but it was the, I mean, part seven, I can read it to you. Because the San Diego ordinance reaches too far into the realm of protected speech, we conclude that is unconstitutional on its face. How do you, how do you interpret that sentence? I would interpret that sentence to be suggesting it can't be applied at all. I think the, that case, obviously what we have here is a regulation that deals both with commercial speech and non-commercial speech, but we do not get to the non-commercial part of the argument, because the only type of speech involved in this case is commercial speech. I don't know why that is. I mean, that's the whole point of facial, the whole point of a facial judgment in the free speech arena is you take it down. I mean, it's got an overbreadth component to it. And I'm not even sure I understand the hardship. I mean, if you have the courage of your convictions about this commercial speech idea, just repass the ordinance. So it only, the on-site off-site distinction only applies to commercial speech. Why isn't that a pretty simple fix if you think that your media is gold on that? Your honor, that is an option. Obviously I am not the general assembly, the general assembly of Kentucky, if it so desires can make that change to the billboard act. But at this point in time, that change has not been done. You could have argued at the end there, Metro Media also suggested that the non-commercial components would be severable from the commercial components, but you didn't make a severability argument here. Do you think that that type of argument is now forfeited? It is true that that argument was not made at the lower court level. And based on the Thomas case, I can't make that argument, but the argument has been raised in the amicus brief. And I believe based on the amicus brief, it could be severable. Anything could be. That's correct, your honor. But as I said, I believe this is a commercial speech case that should be considered under intermediate scrutiny under central Hudson. I think that's what the Metro through Metro Media, the Kentucky regulation satisfies intermediate scrutiny. What's your reaction to our recent Sixth Circuit decisions by Judge Batchelder and Judge Boggs? Does it take you back to the same point? If it's commercial only, you still have a shot given Metro Media, or do you think those changed the calculation or you have an answer to them? The International Outdoor case, it did come down essentially within a week after what we filed was our principal brief. Right. I appreciate that. And I don't think the International Outdoor case actually changes the analysis in this case. And let me explain why. In the International Outdoor case, the billboard company had asked for billboards. Both were denied and a free speech challenge was made. The difference in International Outdoor case from here is that that case actually involved commercial speech and non-commercial speech. That sounds familiar. That's correct. But this could be commercial. But what my argument is, is that this case, it's in front of the court, is a commercial speech only case. And as an only a commercial speech case, lesser protection is afforded for commercial speech than other forms of speech. So I think your point about International Outdoor is not just that the statute was could be commercial and non-commercial, but that the party before the court could potentially raise commercial and non-commercial applications. But the way I read the opinion was that it was a statute based opinion. And if the statute had any, I guess it would be any non-commercial applications that we still apply strict scrutiny to the statute. And here, I mean, everybody agrees that it's the application to the statute, not the application to the speech before the court that matters. So, or that is non-commercial. So does that, I mean, how do you, how would you distinguish the aspect of International Outdoor that said we essentially apply strict scrutiny even when it's commercial speech, if it has non-commercial applications? Your Honor, the way I look at this is that the Supreme Court and other courts have treated different categories of speech differently. Even if you look at Central Hudson, which is the commercial speech case, the first part of that test is whether or not it's misleading, whether or not it's illegal. So even in the commercial speech realm, misleading commercial speech or illegal commercial speech is a separate category and it is treated differently. The courts treat fighting words. It's an unprotected... Counsel, let's just, you know, I'll accept, I haven't gone back to look, but I'll accept for the sake of argument that the only thing so far were billboards that had commercial speech. I'm just going to accept that for the sake of argument, but who's to say, I mean, if they were told, you're okay if you somehow put up non-commercial speech, why couldn't they do an ad? Lie and stand here, get off at this exit, and by the way, vote in the next election. I mean, it's not that simple just to say it's true. The actual billboard you regulated may be just classic commercial speech, but once they know how this works, it wouldn't be very difficult to add a non-commercial speech component to it. So I'm just not even sure what good this does for you. Once you decide to regulate both, of course, someone's going to say, oh, I see, I can do this as long as I add some non-commercial speech. I take it that's what you're saying. You're conceding. If Lie and stand had said at the end, by the way, register to vote, I kind of like the whole idea of this sign having that for what it's worth, makes me smile. You would say that's okay? I would say that that is a different case. Oh, well, thank you. And a different analysis would need to be done by the court. Everything you've said so far indicates that would be a lay down and that Lie and stand wins that. And it just does not seem really silly. Well, your honor, I'm not going to say my argument is silly. Well, I don't mean that. I'm just trying to deal with the distinction and I just don't know what to do with it. The ordinance happens to regulate both. You never try to sever. I'm not even sure you could sever, but what do we do? It just seems very funny to say and very artificial to say, well, it so happens the reason for this particular enforcement action was a commercial sign. And that just seems really odd to me. Your honor, I can appreciate, but that is the facts is that this is a commercial speech only sign. And because it's only commercial speech, lesser protection is afforded it. And the Kentucky's regulation should be analyzed under intermediate scrutiny. And if you look at intermediate scrutiny, this particular regulation of commercial speech is satisfied. I see that my time is going to be up here. Obviously I can address that part in my. Sounds good. That sounds great. Thank you, Mr. Murray. Let's hear from you. Wait, you've got to turn your mute. Thank you very much. Good morning, your honors. Yes. My name is, I do represent LD management company and American pride, not this case, your honors. First of all, judge Murphy, you are correct. In Metro media, we had a plurality decision of four justices who ultimately concluded that on its face and in all of its applications, the San Diego ordinance was unconstitutional. The two concurring justices would have gone even more broadly and said the entire ordinance is unconstitutional, both as applied to commercial and non-commercial speech. You said that the commercial speech portion of Metro media was dicta. And I'm not certain it's dicta because the court at the end said that portion could be severed. And so the judgment of the court, which includes the four justice plurality was that it's unconstitutional on its face, but that the state courts might be able to sever the commercial speech applications from the non-commercial speech applications and apply the commercial speech applications. So I do think that the analysis on the commercial speech component of the first amendment was necessary to that judgment, the severability judgment. And I understand your point, your honor. Although it was a plurality and the holding required the two concurring justices, but I see your point. In this case- But doesn't that, if it's commercial speech, then why isn't this case the same case? Because the on-site, off-site distinction was clearly addressed in that opinion. There was an entire paragraph on why, despite that distinction, it still satisfied central Huston's intermediate scrutiny. It seems like that same exact analysis would apply here. Setting aside over-breath or non-commercial, if we're only looking at the commercial speech component of this case, Metro media seems controlling to me. Well, I don't agree with that, your honor. We think Judge Walker was correct that even under intermediate scrutiny, on this record, the statute and regulations do not satisfy even the central Hudson- What's the difference between the cases? There was no evidence introduced in Metro media. The court just took it almost as a matter of law that aesthetic reasons or judgments were sufficient to justify the on-site, off-site distinction. There's a lot of water over the 1981 commercial speech area. You've got Sorrell. Then you've got Reed versus Town of Gilbert. There's even a question as to whether Reed has overruled- Before you go down that road, is there any difference between the records in Metro media in this case? Go ahead. Yes. We have them responding to requests for admissions indicating that none of the interests that they advance are implicated by our sign, that it doesn't distract motorists, it doesn't interfere with aesthetics, it doesn't do any of the things that the statute is supposed to further. We also ask them to produce any documents, reports, studies, anything that would support the governmental interests. They produce nothing. They produce some emails that had nothing to do with that. I thought what Judge Murphy was trying to ask you was compare Metro media in that one paragraph to this case. Does a Metro media suggest it's not an evidence question or is there a way in which you get out from under that here? I think that then you've got to go to since the discovery case following that that distinguished Metro media. There you'll recall- That wasn't a commercial speech case, was it? Yes, it was. It was a Central Hudson commercial speech case. It wasn't both? No. What happened was it was a Cincinnati ordinance that prohibited only commercial news racks but allowed non-commercial news racks. It was tested solely under Central Hudson and the Supreme Court held that it didn't satisfy the third and fourth prongs of the Central Hudson test and they distinguished Metro media. Of course, that's a much later decision. Isn't it significant that they distinguished Metro media on the grounds that there was an off-site on-site distinction in Metro media and that the distinction in the City of Cincinnati was non-commercial versus commercial? That suggests that this case falls within the footnote in the City of Cincinnati distinguishing Metro media, not within the rule that the City of is true, Your Honor. Five months ago, this International Outdoor Incorporated versus the City of Troy rejects the central argument that the Kentucky lawyers are making in this case. Your Court rejected the notion that Central Hudson intermediate scrutiny rather than strict scrutiny would apply in testing the constitutionality of the Troy ordinance. You have to remember this. The district court dealt with that. There were several issues that was important in that there was a permit scheme that had for certain content and the district court said, however, the speech at issue was only commercial speech. That's what the district court said and by Central Hudson and affirmed the constitutionality of the ordinance. This court reversed because the ordinance wasn't limited to commercial speech. It was a content-based ordinance that regulated both commercial speech and non-commercial speech. In that sense, this court reversed and said that Reed strict scrutiny has to apply, not Central Hudson. What do you make of the argument distinguishing International Outdoor that the litigant in that case, while it was primarily about commercial speech, the permit was encompassing enough to allow for non-commercial speech, which could ostensibly make it a non-commercial speech case. I think that's how the other side would distinguish International Outdoor. No, I think that's the whole point. That's why this case is the same. It was the exemptions from the permit requirement for certain speech that content-based regulation. As a content-based regulation, does it need to satisfy Central Hudson intermediate scrutiny or does it need to satisfy Reed strict scrutiny? The Sixth Circuit, your court held that because the ordinance regulated both commercial and non-commercial speech had to be tested under strict scrutiny. That's exactly the same situation we have here. What's your take on the view that we ought to in our brief, we cited a whole laundry list of cases that says that amicus cannot raise an issue that the parties have not raised. No, that of course is easy, but forfeitability is a discretionary doctrine. Well, I still don't even hear the state of Kentucky vociferously arguing for severability, nor do I understand what their position would sever it. In the most recent cases, the United States Supreme Court decision in U.S. versus Seningen Smith, where the court, you may recall in that case, there was a First Amendment as applied challenge to a federal criminal statute, but not a facial challenge. And the Ninth Circuit asked amicus to come in argue an overbreadth challenge and struck the statute down as overbroad. The government appeal, or so I assert the Supreme Court reversed and said, you can't raise these issues. The parties have to control what the arguments are. And the party in that case never raised an overbreadth issue. I ask you, what's the scope of the injunction? Is the scope of the injunction only for Lyonsden? Yes. So it's not a so-called statewide or all-party injunction. So ostensibly, the forfeiture is less concerning in this case because another party who has regulated the state could raise the severability argument at that time? Yes. I mean, the judgment is that it was unconstitutional both on its face and as applied. And the court said the court permanently enjoins Kentucky from enforcing the Kentucky Billboard Act against Lyonsden. It did go on to say that it's unconstitutional on its face and as applied. So I would leave it to another party if they tried to enforce it against someone else as to whether that injunction would protect some other party. But it is facially unconstitutional. And by the way, just so it's clear, there's no dispute that it applies to non-commercial speech. If you look at pages 9 to 16 of our brief, for example, we quoted much of the testimony that we obtained from the public officials. Counsel, remind me, just clarify a kind of a loose end in my head. Am I right in recalling that facial kind of the overbreath in the First Amendment doctrine doesn't normally apply to commercial speech cases? Am I right in remembering that? So if you had an exclusively, let's just say this sign was just on-site, off-site, just commercial speech. Am I remembering correctly that facial, the overbreath doctrine doesn't apply in that setting or am I wrong about that? Yes, if it were. No, you're right about that. If it were solely commercial speech. But the United States Supreme Court in Board of Trustees of the State of University of New York versus Fox held a commercial speaker pending to challenge on First Amendment overbreath grounds a suit that applies to both commercial and non-speech. A commercial speaker does not have standing to challenge on overbreath grounds a statute that only applies to commercial speech. In other words, a commercial speaker can't say, well, some of the commercial speech that is regulated shouldn't be regulated. But a commercial speaker does have standing to say, even if you could regulate commercial speech, if you also regulate non-commercial speech in a substantial way, then it's unconstitutionally overbroad on its face. And that clearly is the situation here. This statute and regulation. Do you have any evidence that they've enforced the statute in non-commercial settings? Well, we have the testimony from the public officials that it applies equally in non-commercial and commercial speech. I'm asking enforcement. I mean, we can all read. We realize it applies by its terms, but I'm just curious if there's any evidence that they've applied it to non-commercial boards. There really is little evidence as to, there's only a few instances in the record about their attempts to enforce it against various actors. So no, there's not a lot of evidence or history as to how many people have been subjected to enforcement actions in the state. But they made it clear if the lion's den changed its sign to a political sign, it's still illegal. If it changed its sign to a religious message, it's still illegal. If they change their sign to an issue-oriented message, it's still illegal and they would be demanding taken down. And so there's a vast amount of constitutionally protected non-commercial speech that is covered by this statute and regulation, which clearly makes it overbrought in addition to the fact that it obviously, under Thomas versus Bright of this court's decision, obviously fails to satisfy strict scrutiny. And keep in mind... So the overbreath doctrine requires what? Substantial overbreath. Yes. How do you, do you determine substantial overbreath? Can you determine substantial overbreath just by looking at the face of the statute and saying it obviously applies to non-commercial speech or do you actually have to show... Well, that's one way that you can do it because you can determine from the face of the statute how vastly it does. That's what happened in U.S. versus Stevens. Okay. I was going to ask about a case. Is there a case that says just looking at the plain face of the statute, you can determine if it's facially overbrought? So Stevens? I think U.S. versus Stevens, the animal cruelty case that struck down on overbreath is one way to do it. There's a free speech coalition versus attorney general, which did the video game out of California case also did that. But we also have not just the testimony of the public officials who said that's exactly how it works and that's exactly how they would enforce it. So we not only have the language of the two public officials in enforcing this statute. So we simply think, Your Honor, that these statutes and regulations cannot survive Reed. They cannot survive Thomas versus Bright decided by this court or the international outdoor case that in the Fifth Circuit, which we said the same thing. Mr. Murray, I think you've seen your time is up. So thank you very much. Mr. Ray. Thank you for your rebuttal. I apologize. I was having trouble getting it unmuted there. It appears the court has spent quite a bit of time here dealing with the overbreath issue. Obviously, the overbreath issue was not addressed by the lower court. The lower court did not make a decision on the overbreath analysis. Um, as the court knows, overbreath is a strong medicine that's supposed to be employed with hesitation. And as a last resort, the burden is on the party seeking overbreath to demonstrate that those that the the parties that are not before the court are being frozen out from speaking. I don't think there's the evidence that's been shown here to support that. Why would you need evidence in a world in which the statute so plainly covers commercial and non commercial speech? Well, that seems really silly and, you know, quite chilling. Frankly, it's a free speech case. Well, it must be. I think the court has said that the evidence has that it has to be real and substantial. As counsel pointed out, there's not been any actual freezing out of any person. Are you telling me the reason not to worry is the state of Kentucky actually doesn't enforce the order by its terms? No, Your Honor. I'm saying that the evidence is supposed to be supplied by the party making that challenge, and I don't believe there's sufficient instances here. Why isn't the testimony of your own witnesses suggesting that they would enforce it against in the non commercial speech context enough? Is this a TKO situation, or what do we do here? I apologize, Your Honor. I'm trying to think of an instance regarding that, and I do believe that the issue is an issue for the cabinet here, but I don't believe it carries the day on over breath. I believe there has to be substantial issues. Non commercial speech is just part of what the cabinet regulates. As we've shown here in this case, the commercial speech part is not overbroad. And I see that my time is up. All right, listen up. Thanks to both of you for your helpful briefs and arguments. We're quite grateful as always, and we'll find our way through the case. So thanks very much. The case will be submitted and the clerk may call the next case.